MELISSA ARMSTRONG (Tex. Bar No. 24050234)
MICHAEL T. GRIMES (Md. Bar No, 1708290001)
CAROLYN KURR (Md. Bar No. 199512130114)
PRO HAC VICE APPLICATIONS PENDING
100 F Street, NE
Washington, D.C.  20549
Email:  armstrongme@sec.gov
Phone: (202) 551-4724 (Armstrong)
Fax: (703) 772-9292 (Armstrong)

LOCAL COUNSEL:
AMY J. LONGO (Cal. Bar No. 198304)
444 S. Flower Street, Suite 900
U.S. Securities and Exchange Commission
Los Angeles, California 90071
Email: LongoA@sec.gov
Phone: (323) 965-3835
Fax: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| LAMBERT VANDER TUIG, BEN SCHACTSCHNEIDER, CAPITAL DEVELOPMENT RESOURCES, f/k/a BIOSYNETICS, and BIOSYNETICS MANAGEMENT, | |
| Defendants, and | |
| GALILEO LABS, INC. | |
| Relief Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission" or "SEC"), for its Complaint against Defendants Lambert Vander Tuig, Ben Schactschneider, Capital Development Resources, f/k/a Biosynetics, and BioSynetics Management (collectively, "Defendants") and against Relief Defendant Galileo Labs, Inc., hereby alleges as follows:

## JURISDICTION AND VENUE

1. The Commission brings this action pursuant to Sections 20(b) and 20(c) of the Securities Act of 1933 ("Securities Act") [*15 U.S.C. § 77t(b)*], and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [*15 U.S.C. §§ 78u(d)* and *78u(e)*].

2. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [*15 U.S.C. § 77v*], Section 27 of the Exchange Act [*15 U.S.C. § 78aa*], and 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to Securities Act Section 22(a) [*15 U.S.C. § 77v(a)*] and Exchange Act Section 27 [*15 U.S.C. § 78aa*] as acts, practices, and courses of business constituting violations alleged herein occurred within the Central District of California. Defendants Lambert Vander Tuig and Ben Schactschneider reside within the Central District of California. Many victims of the Defendants' fraud reside within this District, and many of the fraudulent securities transactions occurred within this District.

4. Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein.

## SUMMARY

5. Defendants Lambert Vander Tuig ("Vander Tuig") and Ben Schactschneider ("Schactschneider"), while using aliases to hide their true identities and Vander Tuig's previous convictions and securities law violations, perpetuated an offering fraud to sell unregistered private placement investments in a company that

they falsely described as an established pharmaceutical or nutraceutical company.

6. From May 2018 until at least October 2020, Vander Tuig, Schachtschneider, and others working at Vander Tuig's direction raised at least $763,500 from at least 28 investors, pitching purported investments in Defendants Capital Development Resources, f/k/a Biosynetics, and Biosynetics Management (collectively "Biosynetics"). Vander Tuig and Schachtschneider personally solicited at least $405,000 of the money raised. In so doing, Defendants fundamentally mischaracterized Biosynetics' present operations and future prospects.

7. Vander Tuig, Schachtschneider, and others working at Vander Tuig's direction falsely claimed that Biosynetics produced and marketed a sleep aid called SOMNUS VI. Specifically, they told investors that Biosynetics had distribution agreements for SOMNUS VI in place with major retailers, including Costco and Walmart. In fact, no such agreements exist or existed. They also told investors that investments in Biosynetics would yield extraordinary returns when they had no basis for such representations.

8. The Biosynetics Private Placement Memoranda ("PPM") and other offering materials, which Vander Tuig and Schachtschneider distributed to investors, also contained material false statements. One version of the Biosynetics PPM listed as the company's management two executives who either do not exist or, at a minimum, do not have the backgrounds described to investors.

9. Additionally, Vander Tuig, Schachtschneider, and Biosynetics explicitly represented, orally and in written offering materials, that investor proceeds would be used for specific purposes, including raw materials, lab development, and other research and development expenses. In fact, most investor proceeds were misappropriated and used for cash or other bank withdrawals, retail, restaurant and travel expenses, payments to cold-callers working at Vander Tuig's direction, and various unrelated entities. Schachtschneider and Vander Tuig personally received a combined $107,000 of Biosynetics' investor funds.

10. By engaging in the conduct described herein, the Defendants have violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*], and Sections 5(a), 5(c), and 17(a) of the Securities Act [*17 U.S.C. §§ 77e(a), (c), 77q(a)*].

**DEFENDANTS**

11. **Lambert Vander Tuig ("Vander Tuig")** is a recidivist securities-law violator. In two prior SEC enforcement actions, federal courts in this District have twice permanently enjoined him from violating Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. In November 2014, in a criminal case arising out of the same conduct as one of the SEC's enforcement actions, Vander Tuig pleaded guilty in California state court to securities fraud and grand theft, was sentenced to 20 years in prison, and was ordered to pay $50 million in restitution. Vander Tuig was released from prison before the Relevant Time Period (defined below). During a portion of the Relevant Time Period, Vander Tuig resided in Yorba Linda, CA.

12. Starting no later than May 2018, Vander Tuig used the alias "Michael Andrews" to present himself to investors as the principal, CFO, or Head of Finance of Biosynetics. He helped Schachtschneider solicit at least nine investors and received at least $37,000 of investor funds. Vander Tuig opened and controlled multiple bank accounts that received and diverted investor funds, including an account in the name of Relief Defendant Galileo Labs, Inc. Vander Tuig was also named as the sole initial director of Relief Defendant Galileo Labs, Inc., when it was organized as a Delaware corporation in March 27, 2019.

13. **Ben Schachtschneider ("Schachtschneider")** is a cold-caller who worked closely with Vander Tuig. He used the name "Ben Schock" as an alias in connection with the Biosynetics offerings. From July 2018 to August 2020, Schachtschneider solicited at least nine investors and received approximately $70,000

3

of investor funds. Schachtschneider resides in this District in Costa Mesa, CA.

14. **"Biosynetics,"** as used in this Complaint, means the offeror of investments in PPMs that Vander Tuig, Schachtschneider, and others provided to investors. There are different versions of the PPMs, but each describes Biosynetics as a Wyoming corporation, with its principal office at 5000 Birch Street, Third Floor, Newport Beach, CA 92660. One version of the PPM describes Biosynetics, a Wyoming corporation, as the offeror and BioSynetics Inc., a Wyoming corporation, as its manager. The Wyoming Secretary of State's database of entities organized under its laws indicates only two entities have ever had the terms "Biosynetics" or "BioSynetics" in their names: Capital Development Resources, f/k/a Biosynetics, and BioSynetics Management. Accordingly, "Biosynetics" shall collectively refer to:

    a. **Capital Development Resources, f/k/a Biosynetics**, a Wyoming corporation registered on June 12, 2018 with an address at 3401 Sirius Avenue, Suite 3-368, Las Vegas, NV 89102. On May 1, 2019, this entity changed its name from "Biosynetics" to "Capital Development Resources." It is currently inactive and administratively dissolved. When it was known as Biosynetics, this entity owned two bank accounts that received investor funds solicited by Vander Tuig and Schachtschneider.

    b. **BioSynetics Management**, a Wyoming corporation incorporated on May 22, 2018 with an address at 3401 Sirius Avenue, Suite 3-362, Las Vegas, NV 89102. BioSynetics Management is currently inactive and administratively dissolved.

## RELIEF DEFENDANT

15. **Galileo Labs, Inc. ("Galileo Labs")** was incorporated as a Delaware corporation on March 27, 2019, with Vander Tuig as its sole initial director and an address in Yorba Linda, CA. Galileo Labs owns a bank account that Vander Tuig opened in its name and that indirectly received investor funds. Vander Tuig is the

4

signatory on that account.

## FACTUAL ALLEGATIONS

16. Defendants, each acting with scienter, perpetrated a long-running fraud to deceive investors in connection with the offer, purchase, or sale of unregistered securities. They used the money they raised in their fraudulent offerings to unjustly enrich themselves, Relief Defendant Galileo Labs, and others.

### *Defendants Offered and Sold Unregistered Securities*

17. Beginning in approximately May 2018 and continuing until at least October 2020 (the "Relevant Time Period"), Defendants and others offered and sold securities in Biosynetics to at least 28 investors residing in several states, including California, Idaho, Maryland, Missouri, New Jersey, and Louisiana. Among the investors were a retired firefighter, retired military personnel, and multiple small-business owners.

18. Under the Securities Act of 1933 (the "Securities Act"), anyone seeking to sell a security must first register the offering of that security by filing an appropriate registration statement. *See* 15 U.S.C. § 77e. This registration requirement protects investors by promoting disclosure of information pertinent to informed investment decisions. There was no registration statement in effect for any of Defendants' sales of Biosynetics securities.

19. Investors paid money in the form of checks and wire transfers to effectuate the purchase and sale of securities from Defendants and others. In total, investors paid at least $763,500 for Biosynetics' unregistered offerings. Vander Tuig and Schachtschneider each received proceeds from their sales of Biosynetics' securities.

### *Vander Tuig and Schachtschneider's Misrepresentations and Deceptive Conduct: Biosynetics Is a Real Company with a Real Product*

20. During the Relevant Time Period, in connection with the offer and sales of securities, Defendants made material misrepresentations orally and in writing to investors about the nature of Biosynetics as an enterprise. Defendants falsely

described Biosynetics as an established pharmaceutical or nutraceutical company with key distribution agreements it did not have.

21. On or around June 8, 2018, Vander Tuig, posing as "Michael Andrews," told an investor that Biosynetics had agreements with large retailers and distributors, including, but not limited to, Walmart, GNC, and Costco.

22. On June 25, 2018, Vander Tuig, using the email address principle@biosynetics.com and the name "Michael Andrews," wrote in an email to an investor that Biosynetics had "agreements in place putting us in Walmart, GNC, and Costco."

23. On or around June 26, 2018, Schachtschneider cold-called an investor and told him that Biosynetics had a product on the market and had agreements with retailers like Walmart to sell its product.

24. On June 26, 2018, Vander Tuig, using the email address principle@biosynetics.com and the name "Michael Andrews," wrote in an email to an investor that Biosynetics has "agreements in place putting us in Walmart GNC and Costco . . . . We stopped taking orders for our 1st product when we hit $10 Million, there is just no reason to take any more than that at this time."

25. In or around July 2018, Schachtschneider told another investor that Biosynetics was creating a sleep aid from cannabinol, and that Biosynetics had purchase orders to sell its product to Costco and Walmart.

26. On July 10, 2018, Schachtschneider, using the email address ben@biosynetics.com and the name "Ben Schock," wrote in an email to an investor, "We just received news last Tuesday night we will be in front of the FDA on July 11th…BioSynetics' Compound will be used with other molecules for the treatment for ALS. A Proforma is attached, this was completed *[sic]* the Company's largest, but not only Distributor. The numbers are staggering. Attached is some of the additional information we talked about.   We just started taking funds this week. The Company stopped taking orders for our products when we hit $10 Million, there is just no reason

6

to take any more than that at this time. We are only offering $2,000,000 shares at $1 dollar a share, the rest of this offering will be at $3-$5 per share."

27. On July 10, 2018, Schachtschneider, using the email address ben@biosynetics.com and the name "Ben Schock," wrote in an email to an investor, "the product (SOMNUS VI) will hit the shelves this November."

28. On July 11, 2018, Schachtschneider, using the email address ben@biosynetics.com and the name "Ben Schock," wrote in an email to an investor that Biosynetics' attorney appeared before the FDA.

29. On July 12, 2018, Schachtschneider, using the email address ben@biosynetics.com and the name "Ben Schock," wrote in an email to an investor, "We will know in the next couple of days whether our compound (as part of an ALS medication produced by Nightingale) qualifies for an IND application.  If we make it through that process, which takes a couple of weeks, the talk around the office is that we will be selling shares at $10."

30. In or around July 2018, Schachtschneider cold-called another investor and told him that Biosynetics had contracts negotiated with large pharmaceutical companies, like Walmart and Costco, for the sale of its products and that investors would receive a tenfold return on their investments.

31. On August 7, 2018, Vander Tuig, using the email address principle@biosynetics.com and the name "Michael Andrews," wrote in an email to an investor, "we have a new product for the 'Sleep Cycle'. This one is my brainchild and the Scientists work *[sic]*. It is a small night-time drink, the distributor for this product handles Snapples Products (all Berkley relationships)."

32. On August 15, 2018, Vander Tuig, using the email address principle@biosynetics.com and referring to himself as "Michael," wrote in an email to an investor, "we are announcing a new product next week, I'll let you know as soon as the Attorneys allow me."

33. In or around January 2019, Vander Tuig told an investor that several

drug stores were selling Biosynetics' products.

34. On March 5, 2019, Schachtschneider, using the email address principle@biosynetics.com and the name "Ben Schock," wrote in an email to an investor, "Our developed Compound is currently treating the symptoms of PTSD, ALS (Lou Gehrig's disease), and has shown [sic] to reduce seizures in Children by more than 80%. The Company is currently marketing an adjustment of the Compound in a Sleep Aid and cannot keep the product on the shelves."

35. On June 27, 2019, Schachtschneider, using the email address ben@biosynetics.com and the name "Ben Schock," emailed another investor, "BioSynetics is a Pharmaceutical Company that has been around for more than 20 years. We have a patent pending on our developed Compound which is currently treating the symptoms of PTSD, ALS (Lou Gehrig's disease), and has shown to reduce seizures in Children by more than 80%. The Company is currently marketing an adjustment of the Compound in a Sleep Aid and cannot keep the product on the shelves. We are only selling approximately 30% of the Company in a private offering in an effort to handle the demand for the product."

36. In or around July 2019, Vander Tuig, posing as "Michael Andrews," stated at a meeting with an investor that Biosynetics had a processing facility in central California and exclusive rights to a growing facility in northern California. He also told the investor that a doctor was conducting research on the company's products at the University of California, San Diego and that the company was currently selling its products under various unspecified brand names.

37. On or around January 2020, Vander Tuig, posing as "Michael Andrews," and Schachtschneider told an investor that Biosynetics had several labs, that it was expanding and looking for additional labs outside its San Diego location, and that it was selling its product internationally.

38. On or around August 10, 2020, posing as "Michael Andrews," Vander Tuig told an investor that Biosynetics had three or four labs, one in Palm Springs, one

1  in San Diego, and one in Pasadena, CA.

2  39. The representations identified in paragraphs 21 to 38, above, were false and misleading because Biosynetics did not have arrangements with Costco, Walmart, GNC or other large retailers.  Biosynetics had not appeared before the FDA or submitted any new drug application.  Biosynetics did not announce a new product in August 2018 or at any time thereafter.  The US Patent & Trademark Office's patent application database does not show any patent applications by Biosynetics or Galileo Labs.  Biosynetics did not own or operate its own laboratories, and the University of California, San Diego has no record of any research relationship with Biosynetics.

40. Vander Tuig and Schachtschneider, who held themselves out to investors as knowledgeable representatives of Biosynetics, knew or were reckless or negligent in not knowing that each of these misrepresentations was untrue.

41. These false and misleading statements were material to investors considering Biosynetics' prospects for financial performance.  It would be important to reasonable investors to know that Biosynetics did not have distribution deals with major retailers, new products on the verge of approval or release into the market, pending patent applications, or robust research operations to develop additional products.

***Vander Tuig and Schachtschneider's False Statements and Fraudulent Conduct:
Biosynetics Is a High-Return Investment***

42. During the Relevant Time Period, both Vander Tuig and Schachtschneider made false statements concerning the future of Biosynetics.  They each told multiple investors that Biosynetics was either going public or that all of the shareholders would be bought out and that investors stood to reap extraordinary and unrealistic returns.

43. On or around June 14, 2018, Vander Tuig, posing as "Michael Andrews," told an investor that he (the investor) would receive at least a 20:1, but likely a 40:1, return on his investment.

44. On or around July 11, 2018, Vander Tuig, posing as "Michael Andrews," told an investor that he (Vander Tuig) would not sell Biosynetics for less than a 20x multiple purchase price, and that he expected closer to a 40x multiple in less than two years.

45. On July 12, 2018 2018, Schachtschneider, using the email address ben@biosynetics.com and the name "Ben Schock," emailed another investor that "the talk around the office is that we will be selling shares at $10." That investor purchased 25,000 shares at $1 per share.

46. On or around March 19, 2019, Vander Tuig, posing as "Michael Andrews," told an investor that he (the investor) would receive a 20:1 or 100:1 return on investment.

47. In or around July 2019, during an in-person luncheon, Vander Tuig, posing as "Michael Andrews," told an investor that his investment would receive a 20% return each quarter, paid in quarterly installments beginning in April 2020. That investor wrote a check for $100,000 before he left the luncheon.

48. On a number of occasions during the Relevant Time Period, Schachtschneider told investors that multiple offers had been made to purchase or merge with Biosynetics.

49. For instance, in or around July 2018, Schachtschneider told an investor that someone had already offered $60 million, but Biosynetics rejected the offer because Biosynetics was worth more.

50. On July 24, 2020, Schachtschneider, using the email address ben@futureisolates.com and the name "Ben Schock," wrote in an email to an investor, "All the legal stuff for the merger is still in progress due to covid."

51. Each of the representations alleged in paragraphs 43 to 50, above, was false and misleading. Vander Tuig and Schachtschneider had no basis to tell investors that they would receive returns on their investment, let alone quarterly returns of 20% or ultimate returns of 20:1 or 40:1. Furthermore, given that Biosynetics is not the thriving

10

company Vander Tuig and Schachtschneider represented it to be to investors, it is highly unlikely that any third party has ever offered millions of dollars to acquire it, as Vander Tuig and Schachtschneider knew or were reckless or negligent in not knowing.

52. Vander Tuig and Schachtschneider's misrepresentations about the potential profitability of prospective investments in Biosynetics were material. It would be important to investors to know that they could not actually expect to earn handsome profits on their investments and that the company did not have an acquirer waiting in the wings to buy the company.

***Defendants' False Statements and Deceptive Conduct: Biosynetics Is Led by Prominent Figures in the Pharmaceutical Industry***

53. Vander Tuig and Schachtschneider distributed to investors offering materials in which Biosynetics made material false statements regarding, among other things, Biosynetics' management. Vander Tuig made similar false representations to at least one investor.

54. One version of a private placement memorandum that Vander Tuig and Schachtschneider sent to investors named David Debres as Biosynetics' President and Director and Nick Feely as Biosynetics' Secretary and Director. These two individuals also purportedly signed the Biosynetics stock certificates sent to investors. The Biosynetics offering memo and Biosynetics' website stated that Debres attended Arizona State University and worked at Dupont, and that Feely was employed at Merck KGaA for 14 years.

55. Similarly, on or around March 19, 2019, Vander Tuig, posing as "Michael Andrews," told an investor that Biosynetics' executive team consists of prominent figures in the biopharma industry who conduct clinical research for the company.

56. Debres and Feely, as described to investors, do not appear to exist. No one named David Debres has ever enrolled at Arizona State University, and Dupont could not confirm ever employing him. Similarly, Merck KGaA found no record of

Nick Feely ever having worked at that company.

57. Biosynetics' and Vander Tuig's statements regarding Biosynetics' management were material, false and misleading. They knowingly, recklessly, or negligently gave investors the false impression that Biosynetics was led by industry experts, providing the veneer of legitimacy to an enterprise that had no meaningful pharmaceutical or nutraceutical operations of its own.

*Defendants' False Statements and Deceptive Conduct: Defendants Misled Investors about the Use of Invested Funds*

58. During the Relevant Time Period, Defendants induced investors to invest by falsely representing that their money would be used for the purpose of operating and expanding Biosynetics' operations and research and development. Instead, Defendants misused investor money to unjustly enrich Vander Tuig, Schachtschneider, Biosynetics, Galileo Labs, and others.

59. On or around June 14, 2018, Vander Tuig, posing as "Michael Andrews," told an investor that the investment proceeds were going to be used to purchase a bigger laboratory.

60. On or around June 26, 2018, Schachtschneider told an investor that his investment would be used for raw materials and to help Biosynetics' laboratory generate products to sell. It was important to this investor that his money was being used for operational purposes.

61. On or around July 2018, Schachtschneider told an investor that investor funds would be used to buy equipment and to help fulfill contracts with large retail stores.

62. On or around March 2019, Vander Tuig, posing as "Michael Andrews," told another investor that Biosynetics needed investor money in the short term to build facilities and laboratories.

63. Biosynetics, in its PPMs, told investors that it was raising money from

investors to execute its business plan to manufacture distribute and sell CBN products. Each PPM also made one or more of the following specific promises about the use of proceeds:

    a. "We intend to raise up to $10,000,000 in the Offering through the sale of up to 10,000,000 shares. We anticipate using the first $2,000,000 raised to increase production of SOMNUS VI, to market the product as a nutritional supplement and for general working capital needs. We intend to deploy the next $8,000,000 to pursue the approval of SOMNUS VI as a pharmaceutical drug, including funding the requisite clinical trials and for general working capital needs."

    b. "We will use part of the proceeds from the Offering to engage marketing professionals with significant experience in the sleep aid industry to assist in building a strong online presence and increase product awareness for SOMNUS VI."

    c. "We anticipate using the funds raised to establish a commercial facility to increase production of SOMNUS VI, to market the product as a nutritional supplement. We may also deploy funds to pursue the approval of SOMNUS VI as a pharmaceutical drug, including funding the requisite clinical trials to establish specific efficacy claims and for general working capital needs."

    d. "Company capital that is not invested in Proprietary Products will be invested in short-term United States securities or short-term deposits at financial institutions."

    e. "The Manager has a fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, whether or not in its immediate possession and control, and may not use or permit another to use such funds or assets in any manner except for the

exclusive benefit of the Company. The funds of the Company will not be commingled with the funds of any other person or entity."

64. The representations in paragraphs 59 to 63, above, were false and misleading. As Defendants knew or were reckless or negligent in not knowing, investor funds were not principally used for research, development, or the other specific purposes Defendants identified for investors. From May 2018 through August 2020, at least 28 individuals invested at least $763,500 into Biosynetics. This money was diverted through nine different bank accounts. Most investor proceeds were used for purposes unrelated to Biosynetics, including enriching Vander Tuig and Schachtschneider.

65. From July 2018 through August 2020, out of the $763,500 of investor funds, approximately $700,000 was used to pay for the following:

    f. $322,000 in cash or other bank withdrawals;
    g. $107,000 to pay Vander Tuig and Schachtschneider;
    h. $74,000 to other individuals associated with Biosynetics;
    i. $46,500 for retail, restaurant, travel, and gas expenses;
    j. $79,000 to cold-callers, other employees, and Vander Tuig's then-girlfriend;
    k. $30,000 to buyout one investor's original investment;
    l. $7,850 in rent payments for the benefit of Vander Tuig's then-girlfriend;
    m. $10,000 to a plastic surgeon;
    n. $6,000 to an individual who purportedly created and maintained the Biosynetics website; and
    o. $18,000 to individuals and entities seemingly unconnected to Biosynetics research and development.

66. Defendants' representations about the use of investor funds were material. They led investors to believe their money would be used to help

1  Biosynetics generate profits and/or be acquired at a higher price.

2       67.    All defendants and relief defendants directly or indirectly received investor proceeds unconnected to any legitimate business purpose.

     68.    Specifically, Biosynetics' bank accounts paid $70,000 of investor proceeds to Schachtschneider.

     69.    In addition, Biosynetics' bank accounts paid $45,000 of investor proceeds to a company owned and operated by Vander Tuig, and $172,000 to Relief Defendant Galileo Labs. Vander Tuig was the signatory on both companies' bank accounts. Those companies, in turn, paid $37,000 of investor proceeds to Vander Tuig.

***Defendant Vander Tuig's False Statements and Deceptive Conduct: Use of Alias to Hide His Past Misconduct***

     70.    At all relevant times, Vander Tuig used the alias "Michael Andrews" to obscure his criminal history, including his prior securities fraud felony convictions, SEC injunctions, and penny stock bar.

     71.    Additionally, during the Relevant Time Period, Vander Tuig used varying Biosynetics titles to give the false impression that he was a successful entrepreneur, knowledgeable about the company's affairs, and focused on getting the company's products into the market. At different times, Vander Tuig held himself out as Biosynetics' CFO or Head of Finance. Vander Tuig also told at least two investors that he was the principal of Biosynetics, and, throughout the Relevant Time Period, he regularly emailed investors from "principle@biosynetics.com."

     72.    The corporate records of Defendants Capital Development Resources, f/k/a Biosynetics, and BioSynetics Management do not list Vander Tuig or "Michael Andrews" as an officer or director of either company.

     73.    Vander Tuig's misrepresentations about his name and formal role within Biosynetics were material, false, and misleading. His use of a false name allowed him to hide his past criminal convictions and his prior violations of the securities laws. Investors had a fundamentally false impression of who Michael Andrews was.

It would have been material to investors to know that the promoter who solicited their investment had prior securities fraud convictions, SEC injunctions, and an officer and director bar.

### FIRST CLAIM FOR RELIEF
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
(*Against All Defendants*)

74. The Commission realleges and reincorporates paragraphs 1 through 73 as if fully set forth herein.

75. By reason of the conduct described above, Defendants, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly, knowingly or recklessly (1) employed devices, schemes, or artifices to defraud and/or (2) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and/or (3) engaged in acts, practices, or courses of business which operates or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.  Defendants made false statements and disseminated offering materials containing additional misstatements to investors about Biosynetics' current business and future prospects.

76. By reason of the actions alleged herein, Defendants violated and unless enjoined will continue to violate Exchange Act Section 10(b) [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5(a) and (c)*].

### SECOND CLAIM FOR RELIEF
**Violations of Securities Act Section 17(a)**
(*Against All Defendants*)

77. The Commission realleges and reincorporates paragraphs 1 through 73 as if fully set forth herein.

78. Defendants, directly or indirectly, by use of means of instrumentalities

16

of transportation or communication in interstate commerce or by use of the mails, in the offer or sale of securities: (a) knowingly or recklessly employed devices, schemes or artifices to defraud; (b) knowingly, recklessly, or negligently obtained money or property by means of untrue statements of material fact, or have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities. To induce investors to purchase Biosynetics' securities, Defendants made false statements and disseminated offering materials containing additional misstatements about Biosynetics' current business and future prospects.

79. By reason of the actions alleged herein, Defendants violated and unless enjoined will continue to violate Securities Act Section 17(a) [*15 U.S.C. § 77q(a)*].

### THIRD CLAIM FOR RELIEF
### Violations of Securities Act Section 5
*(Against All Defendants)*

80. The Commission realleges and reincorporated paragraphs 1 through 73 as if fully set forth herein.

81. By engaging in conduct alleged above, Defendants, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce, or of the mails, offered to sell or sold securities, or carried or caused such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale. Vander Tuig and Schachtschneider emailed, texted, called, and met with investors to induce investors to purchase Biosynetics securities and directly or indirectly received proceeds from these sales.

82. No registration statement was filed with the Commission or was in effect with respect to the securities offered by Defendants prior to the offer or sale of those

securities.

83. By engaging in the foregoing misconduct, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [*15 U.S.C. §§ 77e(a) and 77e(c)*].

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
(*Against Relief Defendant Galileo Labs*)

84. The Commission realleges and reincorporates paragraphs 1 through 73 as if fully set forth herein.

85. As described above, Defendants engaged in a fraud to defraud investors in connection with the offer, purchase, or sale of securities of Biosynetics and to use the money raised in such offerings to unjustly enrich themselves, Relief Defendant Galileo Labs, and others in the form of cash, property, and other benefits. Galileo Labs shared at least one bank account with Vander Tuig into which approximately $172,000 of investor money was deposited. Galileo Labs has no legitimate claim to the funds, property and benefits described above, and has thus been unjustly enriched under circumstances in which it is not just, equitable, or conscionable for it to retain such profits.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

(a) finding that each Defendant violated the antifraud and registration provisions of the federal securities laws as alleged herein;

(b) permanently enjoining each Defendant from violating Securities Act Sections 5(a), 5(c), and 17(a) and Exchange Act Section 10(b) and Rule 10b-5 thereunder;

(c) permanently enjoining each Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendants, participating in the issuance, purchase, offer, or sale of any security in an unregistered

1  offering by an issuer;

2  (d) ordering each Defendant to disgorge all ill-gotten gains, plus prejudgment interest thereon, wrongfully obtained as a result of their illegal conduct;

4  (e) ordering the Relief Defendant to disgorge all ill-gotten gains, plus prejudgment interest thereon, obtained as a result of Defendants' illegal conduct alleged in this Complaint;

7  (f) ordering each Defendant to pay civil penalties pursuant to Securities Act Section 20(d) [*15 U.S.C. § 77t(d)*] and Exchange Act Section 21(d) [*15 U.S.C. § 78u(d)*]; and

10 (g) granting such other relief to the Commission as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 39 of the Federal Rules of Civil Procedure and C.D. Cal. L.R. 38-1, Plaintiff demands that this case be tried to a jury.

Dated: July 2, 2021

/s/ Amy J. Longo
Amy J. Longo

Melissa Armstrong
Michael T. Grimes
Carolyn Kurr
Counsel for Plaintiff
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20594
Phone: (202) 551-4274 (Armstrong)
Fax: (703) 772-9292 (Armstrong)
Email: armstrongme@sec.gov (Armstrong)

**Of Counsel:**
Charles J. Felker