UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LAMBERT VANDER TUIG et al.,<br><br>Defendants. | Case No. 2:21-cv-05381-MCS-E<br><br>**ORDER RE: MOTION FOR DEFAULT JUDGMENT (ECF NO. 31)** |

Plaintiff Securities and Exchange Commission moves for entry of default judgment against Defendant Ben Schachtschneider. (Mot., ECF No. 31-1.) Plaintiff provided additional evidence supporting the motion in response to a court order. (Notice of Filing of Add'l Evid., ECF No. 42.) The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.    BACKGROUND

According to the Complaint, Defendant and codefendant Lambert Vander Tuig "perpetuated an offering fraud to sell unregistered private placement investments in a company," Biosynetics, "that they falsely described as an established pharmaceutical or nutraceutical company." (Compl. ¶ 5, ECF No. 1.) They told prospective investors that Biosynetics had distribution agreements for a sleep aid product with major retailers even though no such agreements existed. They baselessly represented that investments in

1

Biosynetics would yield extraordinary returns, in addition to other false representations. As a result, Defendant and Vander Tuig personally received a total of $107,000 of Biosynetics' investor funds. (*See generally id.* ¶¶ 5–73.) Plaintiff asserts three claims against Defendant: (1) violation of Exchange Act Section 10(b) and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; (2) violation of Securities Act Section 17(a), 15 U.S.C. § 77q(a); and (3) violation of Securities Act Section 5(a) and (c), 15 U.S.C. § 77e(a), (c). (*Id.* ¶¶ 74–83.)

Defendant was personally served on July 25, 2021. (Return of Service, ECF No. 14.) The Clerk entered default against Defendant on October 1, 2021, after he failed to timely appear or otherwise respond. (Corrected Default by Clerk, ECF No. 23.)[1]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter default judgment. The Court need not make detailed findings of fact in the event of default. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). On entry of default, well-pleaded allegations in the complaint concerning liability are taken as true. Damages, however, must be proven. *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Courts consider several factors in determining whether to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

---

[1] Plaintiff's return of service and the Clerk's default both misspell Defendant's surname as "Schactschneider." These minor scrivener's errors do not preclude entry of default judgment.

Local Rule 55-1 requires the party seeking default judgment to submit a declaration establishing (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice. C.D. Cal. R. 55-1.

## III.  DISCUSSION

### A.  Jurisdiction, Service of Process, and Procedural Requirements

The Court has subject-matter jurisdiction over claims brought under the federal securities laws. (Compl. ¶¶ 1–2.) *See* 15 U.S.C. §§ 77v, 78aa; 28 U.S.C. § 1331. The Court has general personal jurisdiction over Defendant, who resides in this district. (Compl. ¶ 13.) *See Warfield v. Alaniz*, 569 F.3d 1015, 1028–29 (9th Cir. 2009). Defendant was served personally with the summons and complaint. (Return of Service.) *See* Fed. R. Civ. P. 4(e)(2)(A).

Plaintiff provided a declaration of counsel satisfying the Local Rule 55-1 procedural requirements. (Armstrong Decl., ECF No. 31-2.) Plaintiff served Defendant with a copy of the motion papers, which provide notice of the relief requested. (*E.g.*, Proposed Final J. 7–8, ECF No. 31-4.) *See* C.D. Cal. R. 55-2.

### B.  *Eitel* Factors

#### 1.  Possibility of Prejudice to Plaintiff

The Court first considers whether Plaintiff will be prejudiced if the Court does not enter default judgment. *Eitel*, 782 F.2d at 1471. A plaintiff suffers prejudice if there is no recourse for recovery absent default judgment. *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Here, Plaintiff cannot pursue its claim and recover any remedies against Defendant because he has not appeared in the case. (Mot. 10.) Given Defendant's unwillingness to appear, Plaintiff will be without recourse against Defendant if the Court does not intervene. There is

3

little doubt that Plaintiff will suffer prejudice if the Court does not enter a default judgment.

2.    Merits of Plaintiff's Claim and Sufficiency of the Complaint

The second and third *Eitel* factors require that the plaintiff "state a claim on which the [plaintiff] may recover." *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). Upon a defendant's default, the plaintiff's well-pleaded allegations regarding liability are taken as true. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). As discussed below, the claims against Defendant are adequately pleaded.

a.    *Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5*

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 "forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001); *see* 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5. To prove a Section 17(a)(2) violation, the SEC must demonstrate that a defendant (1) by means of interstate commerce (2) obtained money or property (3) by means of a material false statement or omission and (4) acted at least negligently. *See Dain Rauscher*, 254 F.3d at 856. To establish a violation of Section 10(b) and Rule 10b-5(b), the SEC must show that a defendant "(1) made a material misrepresentation or omission (2) in connection with the purchase or sale of a security (3) with scienter (4) in interstate commerce." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010).

Plaintiff alleges that Defendant made false, material representations that Biosynetics was a real company with a real product, that Biosynetics investments would yield high returns, and that investors' money would be used to operate and expand Biosynetics' operations and research and development. (*E.g.*, Compl. ¶¶ 20, 23, 25–30, 34–35, 37, 39, 41–42, 45, 48–53, 57–58, 60–61, 64, 66.) Defendant knowingly or

recklessly made these statements in the stream of interstate commerce. (*Id.* ¶¶ 4, 16, 40, 51, 64, 75, 78.) As a result, Defendant obtained money in the form of commissions from Biosynetics. (*Id.* ¶¶ 19, 64–65, 68.) Accepting the allegations as true, Defendant violated Section 17(a), Section 10(b), and Rule 10b-5.

> b.  *Securities Act Section 5(a) and (c)*

"Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c), make it unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013) (internal quotation marks omitted). "To establish a prima facie case for violation of Section 5, the SEC must show that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *Id.* Plaintiff pleads that Defendant offered and sold Biosynetics securities to at least 28 investors in several states, that no registration was filed or in effect, and that Defendant made the offers and sales through interstate commerce. (Compl. ¶¶ 17–19, 81–82.) Plaintiff states a prima facie case of violation of Section 5(a) and (c).

> 3.  <u>Sum of Money at Stake</u>

Under the fourth *Eitel* factor, the Court balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (citation omitted). Plaintiff seeks to recover $70,730 in disgorgement of ill-gotten gains, prejudgment interest of $11,594, and a statutory civil penalty of $207,183. Plaintiff also seeks a permanent injunction restraining Defendant from violating the securities laws and participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer. (Mot. 13, 15–20.) The remedies Plaintiff seeks are reasonable and proportionate to the serious securities

1    violations alleged.

2              4.    Possibility of Dispute

3        The fifth *Eitel* factor examines whether there is a likelihood of a dispute of

4    material facts. *Eitel*, 782 F.2d at 1472. As such, when a plaintiff pleads the facts

5    necessary to prevail on his or her claims, there is little possibility of dispute over

6    material facts. *Castworld*, 219 F.R.D. at 498. As discussed, Plaintiff's adequately pleads

7    violations of the securities laws, so the possibility of dispute is remote. This factor

8    weighs in favor of default judgment.

9              5.    Possibility of Excusable Neglect

10        The sixth *Eitel* factor considers whether the defendant's actions may be due to

11   excusable neglect. *Eitel*, 782 F.2d at 1472. There is little possibility of excusable neglect

12   when the plaintiff properly serves the defendant and the defendant is aware of the

13   litigation. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal.

14   2012). Plaintiff properly served Defendant by personal service. Plaintiff's counsel

15   provided Defendant with notice of the lawsuit and the claims against him in a telephone

16   call. (Armstrong Decl. ¶¶ 3–4.) There is no explanation for Defendant's failure to

17   respond to the lawsuit notwithstanding proper service and actual notice, so the

18   possibility of excusable neglect is minimal. This factor weighs in favor of default

19   judgment.

20              6.    Policy Favoring Decisions on the Merits

21        "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

22   782 F.2d at 1472. The existence of Rule 55(b) indicates, however, that "this preference,

23   standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation

24   marks omitted). Defendant failed to respond to Plaintiff's Complaint or offer any

25   defense in this matter, precluding a decision on the merits. This factor does not preclude

26   entry of default judgment. *See id.*

27        Weighing the *Eitel* factors, the Court finds that default judgment is appropriate.

28   ///

## C.    Remedies

Plaintiff seeks permanent injunctive relief, a statutory civil penalty of $207,183, disgorgement of ill-gotten gains in the amount of $70,730, and prejudgment interest in the amount of $11,594. (Mot. 15–20.)

### 1.    Permanent Injunction

To obtain a permanent injunction, the SEC must show there is "a reasonable likelihood of future violations of the securities laws." *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Courts "must assess the totality of the circumstances surrounding the defendant and his violations," looking to past violations, the degree of scienter involved, the defendant's professional occupation, whether the current violations were isolated or recurrent, and whether the defendant recognized the wrongfulness of his conduct or assured against future violations. *Id.* "The existence of past violations may give rise to an inference that there will be future violations . . . ." *Id.*

Plaintiff seeks a permanent injunction restraining Defendant from violating the securities laws and participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer. (Mot. 16.) Having considered the *Murphy* factors, the Court determines that there is a reasonable likelihood Defendant will commit further violations of the securities laws absent injunctive relief. Defendant's past violations here give rise to an inference of future violations. *Murphy*, 626 F.2d at 655. Plaintiff has shown Defendant repeatedly and knowingly or recklessly violated the securities laws. Because Defendant has failed to participate in this action, he has not demonstrated any recognition of the wrongfulness of his conduct or provided any assurances that he will not commit future violations. *See SEC v. Baccam*, No. ED CV 17-0172 SJO (SPx), 2017 U.S. Dist. LEXIS 88450, at *26 (C.D. Cal. June 8, 2017) (granting permanent injunction requested in motion for default judgment, reasoning that "Baccam has not given any assurances against future violations, but to the contrary, declined to appear in this case"). A permanent injunction is warranted.

///

### 2.   Civil Penalty

The SEC may seek civil penalties for violations of federal securities laws. 15 U.S.C. §§ 77t(d)(1), 78u(d)(3). A third-tier penalty may be imposed where the violations involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Because civil penalties, like injunctions, are intended to deter future violations, courts often apply the same factors for determining whether an injunction should issue to decide whether a civil penalty should issue. *See, e.g.*, *SEC v. Moleski*, No. 2:21-cv-01065-SVW-E, 2021 U.S. Dist. LEXIS 252795, at *17 (C.D. Cal. Oct. 21, 2021); *SEC v. Smith*, No. CV 20-1056 PA (SHKx), 2020 U.S. Dist. LEXIS 194614, at *11 (C.D. Cal. Oct. 19, 2020).

The Court finds that imposition of a civil penalty is warranted for the same reasons a permanent injunction is warranted. Because the alleged violations involved fraudulent conduct and resulted in substantial losses to Biosynetics investors, the Court concludes a third-tier penalty of $207,183 is appropriate. *See SEC v. Duncan*, No. 3:19-cv-11735-KAR, 2022 U.S. Dist. LEXIS 58078, at *12 (D. Mass. Mar. 30, 2022) ("For violations that occurred after November 2, 2015, the statutory per violation maximum third-tier penalty amount, as adjusted for inflation, is $207,183 for all penalties imposed after January 15, 2021." (citing 17 C.F.R. § 201.1001(b)).

### 3.   Disgorgement and Interest

Courts have "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws." *Platforms Wireless*, 617 F.3d at 1096 (internal quotation marks omitted). Courts need not trace every dollar wrongfully obtained; the disgorgement amount need only represent "a reasonable approximation of profits causally connected to the violation." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998) (internal quotation marks omitted); *accord Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) (authorizing "a disgorgement award that does not exceed a

wrongdoer's net profits" as equitable relief). "The SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *Platforms Wireless*, 617 F.3d at 1096 (internal quotation marks omitted).

The SEC submitted evidence that Biosynetics investor funds were deposited into certain bank accounts, that Defendant received funds from these accounts through checks made payable to him personally, and that $70,730 of the funds Defendant received can be traced to Biosynetics investor funds. (Wells Decl. ¶¶ 4–8, ECF No. 31-3; *see generally* 2d Wells Decl., ECF No. 42-1.) The Court determines that this figure is a reasonable approximation of Defendant's ill-gotten gains. Defendant has not appeared to rebut Plaintiff's evidence. *See Platforms Wireless*, 617 F.3d at 1096 ("Once the SEC establishes a reasonable approximation of defendants' actual profits, . . . the burden shifts to the defendants to demonstrate that the disgorgement figure was not a reasonable approximation." (internal quotation marks omitted)). Disgorgement in the amount of $70,730 is appropriate.

Courts award prejudgment interest on ill-gotten gains "to ensure that the wrongdoer does not profit from the illegal activity." *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995). Prejudgment interest may be calculated based on the tax underpayment rate used by the Internal Revenue Service under 26 U.S.C. § 6621(a)(2). *Platform Wireless*, 617 F.3d at 1099. Plaintiff submits that interest calculated based on the tax underpayment rate is $11,594. (Armstrong Decl. ¶ 5 & Ex. C.) The Court accepts Plaintiff's uncontroverted calculation and awards $11,594 in prejudgment interest.

### D.    Rule 54(b)

Plaintiff asks the Court to enter judgment against Defendant without delay. (Mot. 20.) Federal Rule of Civil Procedure 54(b) provides that "the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." "In such cases, default judgment should not be entered when the remaining defendants who are litigating the

action are similarly situated, even if not jointly and severally liable, since it would be incongruous to enter judgment against a defaulting defendant if the answering defendant ultimately shows that the plaintiff's claim lacks merit." *SEC v. Johnson*, No. 2:20-cv-08985-ODW (DFMx), 2021 U.S. Dist. LEXIS 124521, at *10 (C.D. Cal. July 2, 2021) (cleaned up). Here, the only other remaining defendant, Vander Tuig, agreed not to contest his liability and consented to entry of judgment against him. (*See* Stip., ECF No. 26.) Accordingly, there is little to no risk of inconsistent or incongruous judgments between the defendants. *See Johnson*, 2021 U.S. Dist. LEXIS 124521, at *11 (entering judgment under Rule 54(b) upon concluding there was little risk of inconsistent judgments between defaulting defendant and answering codefendant). There is no just reason for delaying entry of final judgment against Defendant.

## IV.    CONCLUSION

The Court grants the motion. The Court directs the Clerk to enter judgment against Defendant consistent with this Order.

**IT IS SO ORDERED.**

Dated: April 19, 2022                          _____
                                               MARK C. SCARSI
                                               UNITED STATES DISTRICT JUDGE